IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-02196-PSF-OES

TERRY HANKINS,

Plaintiff,

v.

GALE NORTON, as Secretary of Interior, USA,

Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Entered by O. Edward Schlatter, United States Magistrate Judge.**

Before the court are plaintiff's Petition For Stay, and defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1), defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6), Or In The Alternative, Motion For A More Definite Statement Pursuant To Fed.R.Civ.P. 12(e), and defendant's Motion To Strike Plaintiff's Second Amended Complaint.   Pursuant to the Order Of Reference To Magistrate Judge, and under 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b), these motions have been referred to me for Recommendation.  Based upon the discussion and analysis to follow, I recommend that the plaintiff's motion be **DENIED** and that the defendant's motion for dismissal under Rule 12(b)(1) and to strike the Second Amended

Complaint be **GRANTED**, resulting in this action being dismissed in its entirety, but that defendant's motion for dismissal under Rule 12(b)(6) or for more definite statement under Rule 12(e) be **DENIED** at this time.

The plaintiff's rights to seek review or reconsideration of this recommendation, by filing objections within ten days, are attached hereto, and are entitled "Advisement Under Fed. R. Civ. P. 72."

## BACKGROUND

In approximately June of 1987, plaintiff acquired an interest in the Ace #7 association placer mining claim in Moffat County, Colorado.  Plaintiff alleges that he has also lived on the claim since 1981.  Defendant contends that plaintiff has installed a water well, septic system, and several outbuildings - to include a residence - on the property, and has placed various pieces of mining equipment on the mining claim, including two shaker tables, three trommels, a metal frame, and a small drill rig.

The Ace #7 mining claim was inspected in 1998, 1999, and 2000 by the Bureau of Land Management ("BLM"), and it was determined that plaintiff's activities on the claim did not comply with the use and occupancy regulations of the United States Department of Interior ("Interior") set forth at 43 C.F.R. subpart 3715.  On September 26, 2000, the BLM issued a Notice of Noncompliance ("NON") to the plaintiff.  Citing to 43 C.F.R. § 3715.2, the BLM stated that prior site visits had revealed that although there was ancillary work being performed on the Ace #7 mining claim,

"no appreciable mining activity was documented as having occurred" involving

"significant regular extraction and processing of mineral bearing earth materials."

The NON directed that plaintiff had 30 days in which to remove his trailer,

outbuildings, mining equipment, materials, supplies, septic system, and debris from

the public lands.

On October 25, 2000, the plaintiff appealed the NON to the Interior Board of

Land Appeals ("IBLA").  Plaintiff challenged the basis for the issuance of the 2000

NON, and argued that he should be allowed to stay on the public lands because (1)

the location of the mining claim was sufficiently remote so as to warrant its continued

occupancy; (2) it was necessary for the plaintiff to live on the claim to prevent

vandalism or theft of exposed minerals and equipment; (3) the 2000 NON exceeded

the scope of the BLM's authority and the BLM did not have authority to order

reclamation of the surface; (4) he has an interest in real property, as a valid owner of a

mining claim, which precludes the BLM from ordering him to shut down operations,

remove buildings or equipment, or reclaim the surface of the claim; and (5) in 1987

and 1988, the BLM had allegedly provided him with written permission to place a

trailer home on the land.

The IBLA issued its ruling on plaintiff's appeal on July 22, 2004.  In reviewing

the BLM's finding that the plaintiff was not in compliance with 43 C.F.R. § 3715.2,  the

IBLA found that plaintiff did not meet the requirements of the regulation in maintaining

a residence on the claim and affirmed the BLM on the residence issue.  However, the

IBLA did reverse the 2000 NON on the issue of plaintiff's use of the mining claim for storage purposes, and also found that the notice improperly ordered the plaintiff to immediately cease all activity and reclaim the site.  The IBLA determined that the BLM should have given the plaintiff a period of 60 days within which to demonstrate that he had taken corrective action to bring his mining operation into compliance with the law.  The matter was remanded to the BLM "to issue an amended NON that will establish a period of 60 days for Hankins to demonstrate that he has taken corrective action to bring his mining operation into compliance."

On September 22, 2004, the BLM issued an Amended Notice of Noncompliance ("Amended NON"), in accordance with the IBLA ruling.  Under the Amended NON, plaintiff was given 60 days in which to demonstrate that he had taken corrective action with regard to the mining claim which would comply with 43 C.F.R. § 3715.  Plaintiff was warned in the Amended NON that if he failed to demonstrate compliance within the allowed time, the BLM "may take appropriate action to require removal of the residence facilities and appropriate reclamation of the site."  Defendant alleges that plaintiff failed to demonstrate compliance by November 28, 2004, when the 60-day deadline expired.

On October 22, 2004, plaintiff, acting *pro se*, filed his Complaint in this action.  See Docket #3.  Shortly thereafter, on November 5, 2004, he filed an exact copy of the Complaint upon which someone has made hand-written notations concerning attempts to mail the pleading and other documents to certain officials.  See Docket

#7.  Also on November 5, 2004, plaintiff filed an Amended Complaint.  <u>See</u> Docket #10.

The Amended Complaint, although filed on the standardized form provided by the court to *pro se* litigants, is a rambling compilation of allegations by the plaintiff concerning his use of and occupancy on public lands, his disagreement with certain governing regulations, and his dissatisfaction with certain BLM officials.  In a Petition For Stay, filed the same day as his Amended Complaint, plaintiff has also requested that this court enter a stay of any further action by the BLM to preserve the status quo during this proceedings.

Defendant opposes the stay requested by the plaintiff, arguing that he cannot establish the four elements necessary for granting the equitable relief he requests, which is essentially a request for a preliminary injunction.  Defendant has further filed two separate dispositive motions, one arguing that this court lacks jurisdiction under Fed.R.Civ.P. 12(b)(1) and the other arguing that plaintiff has failed to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6) with regard to certain allegations in the Amended Complaint or, in the alternative, that the plaintiff's claims are too vague and a more definite statement of the claims is required under Fed.R.Civ.P. 12(e) before the defendant can meaningfully respond.

Under the motions, the defendant speculates that plaintiff is raising seven claims/requests: (1) a challenge to the legality of 43 C.F.R. subpart 3715; (2) a declaratory judgment claim requesting that the court find that plaintiff's occupancy of

the public lands complies with 43 C.F.R. subpart 3715; (3) a challenge to the legality

of BLM's surface management regulations issued in 2000 and found at 43 C.F.R.

subpart 3809, with a request that the court "return to the 1980 version;" (4) a request

that the court terminate the employment of three BLM employees; (5) a "regulatory

takings" claim to compensate plaintiff in the amount of $164,000.00 in damages for

alleged destruction of his mining claim and living quarters by BLM employees; (6) a

challenge to the legality of the "patent moratorium" imposed by Congress; and (7) a

mandamus claim requesting that the court order the BLM to issue plaintiff a patent to

the Ace #7 mining claim.

     In her Rule 12(b)(1) motion, defendant alleges that jurisdiction is lacking

because plaintiff has failed to identify a waiver of sovereign immunity under which he

can bring his claims, plaintiff has failed to exhaust his administrative remedies prior

to seeking assistance from this court, plaintiff's challenge to 43 C.F.R. subpart 3809

is moot and plaintiff lacks standing to bring such a claim, that there is no jurisdictional

authority for this court to grant plaintiff's request for termination of BLM employees, the

United States Court of Federal Claims has exclusive jurisdiction over plaintiff's

regulatory takings claim, plaintiff has never filed a patent application and therefore he

lacks standing to challenge the patent moratorium, and this court lacks authority to

compel the DOI to issue a patent to the plaintiff because the right to a patent has not

vested in the plaintiff.

     With regard to Fed.R.Civ.P. 12(b)(6), defendant argues that plaintiff's challenge

to the legality of 43 C.F.R. subpart 3715 is barred by the applicable statute of limitations, that plaintiff cannot challenge Subpart 3715 as an act of *Ultra Vires*, that Congress and not the Secretary of Interior instituted the patent moratorium, and that plaintiff has failed to demonstrate an entitlement to mandamus relief in the issuance of a patent on the mining claim because he has not filed a patent application or complied with any of the extensive requirements for obtaining a patent.  Alternatively, although the defendant has made a tremendous effort at deciphering what claims the plaintiff may be attempting to bring in this lawsuit,  the defendant contends that the plaintiff's claims are too vague to enable a meaningful response and plaintiff should be directed to make a more definite statement of his claims if the lawsuit is allowed to go forward.

        Plaintiff's joint response to the defendant's motions does not directly address most of the arguments and issues raised in the motions.  Instead, the plaintiff indicates that he is "challenging the constitutionality of the overall regulations 43CFR3715 and 43CFR 3809 [sic], based on the widespread and continuing violations of the U.S. Constitutional rights of numerous mining claimants in general and specifically" in plaintiff's case.  <u>See</u> Docket #26.  Plaintiff does contend that he exhausted his administrative appeals and remedies in conversations and letters with BLM officials, and that he has standing to challenge 43 C.F.R. subpart 3809 because he incurred an injury in fact based on actions of John E. Husband who is employed by the BLM.  <u>Id</u>.

With his response to the defendant's motions, plaintiff also tendered a document entitled "Demand For Jury Trial To Determine Facts And Assess Damages Or Compensatory Damages," in which he seeks to add the United States of America as a named defendant and raises additional factual assertions concerning the alleged destruction of the Joker Mill, which is owned by Orvie Zimmerman and located approximately 15 miles from the Act #7 mining claim.  Defendant has construed this document as an attempt by the plaintiff to amend his complaint for a second time. Defendant strenuously objects to such an amendment because it would be futile, and has filed a motion requesting that the proposed amendment be stricken.

## DISCUSSION

**I.      Defendant's Motion To Strike Plaintiff's Second Amended Complaint.**

Plaintiff previously amended his complaint as a matter of course under Fed.R.Civ.P. 15(a), by the filing of his Amended Complaint on November 5, 2004. Accordingly, plaintiff must seek leave of court or consent of the defendant to further amend his pleading.  See Fed.R.Civ.P. 15(a).  *Pro se* status does not excuse the obligation of any litigant to comply with the same rules of procedure that govern other litigants.   See Green v.  Dorrell, 969 F.2d 915, 917 (10th Cir. 1992); Nielsen v. Price, 17 F.3d 1276, 1277 (10th Cir. 1994).  Plaintiff has tendered a Second Amended Complaint to the court for filing, but has failed to either obtain the consent of the defendant in this regard or properly request leave of court, by filing a motion.

Additionally, even if the plaintiff were to comply with the requirements of Rule

15(a), the court should deny any request for leave to amend.   Generally, leave to amend "shall be freely given when justice so requires."  FED.R.CIV.P. 15(a).  Though courts are expected to heed this mandate, Foman v. Davis, 371 U.S. 178, 182 (1962), the matter is still committed to the court's sound discretion, Federal Ins. Co. v. Gates Learjet Corp., 823 F.2d 383, 387 (10th Cir. 1987).

> 'Liberality in amendment is important to assure a party a fair opportunity to present his claims and defenses,' but 'equal attention should be given to the proposition that there must be an end finally to a particular litigation.'

Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir. 1994) (quoting Freeman v. Continental Gin Co., 381 F.2d 459, 469 (5th Cir. 1967) (citation omitted)).

> Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.

Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993).

Plaintiff has failed to assert a jurisdictional basis for the claims he seeks to add to this lawsuit, because he fails to identify a waiver of sovereign immunity or set forth a cause of action for the factual allegations he makes.  Further, plaintiff fails to demonstrate any well-pled facts or facts from which it can be inferred that he has standing to bring any claims with regard to the Joker Mill since, by his own admission, he is not the owner of that facility.

The amendments proposed by the plaintiff are futile, and leave of court to file the Second Amended Complaint tendered by the plaintiff on February 1, 2005, should

be denied.  Additionally, defendant's Motion To Strike Plaintiff's Second Amended

Complaint should be **GRANTED.**

## II.    Defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1).

### A.    Standard Of Review.

Under Rule 12(b)(1), a motion to dismiss may be granted if the court does not

have subject matter jurisdiction over the matter.  The determination of subject matter

jurisdiction is a threshold question of law.  Madsen v. United States ex. rel. United

States Army Corps of Engineers, 841 F.2d 1011, 1012 (10th Cir. 1987).  As courts of

limited jurisdiction, federal courts may only adjudicate cases that the Constitution and

Congress have granted them authority to hear.  See U.S. CONST. ART. III, § 2; Morris v.

City of Hobart, 39 F.3d 1105, 1110 (10th Cir. 1994).  "[T]he party invoking federal

jurisdiction bears the burden of proof."  Marcus v. Kansas Dept. of Revenue, 170 F.3d

1305, 1309 (10th Cir. 1999).

"Motions to dismiss pursuant to Rule 12(b)(1) may take two forms."  Amoco

Production Co. v. Aspen Group, 8 F.Supp.2d 1249, 1251 (D.Colo. 1998).  First, a party

may attack the facial sufficiency of the complaint and the court must accept the

allegations of the complaint as true.  Id.  Second, a party may attack the factual

assertions regarding subject matter jurisdiction through affidavits and other

documents and the court "has wide discretion to allow affidavits, other documents

and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule

12(b)(1)."  Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).  "A 12(b)(1)

10

motion . . . can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion." Wheeler v. Hurdman, 825 F.2d 257, 259 n.5 (10th Cir. 1987).  In this case, the defendant's Motion To Dismiss made under Rule 12(b)(1) challenges the factual assertions underlying plaintiff's Amended Complaint.

**B.    Sovereign Immunity**.

Defendant correctly argues that because plaintiff's lawsuit raises claims against her in her official capacity, the claims would be essentially against the United States.  Dugan v. Rank, 372 U.S. 609, 620 (1963) (claims against federal agents or employees in their official capacities are construed as a claim against the United States); Atkinson v. O'Neill, 867 F.2d 589, 590 (10th Cir. 1989) (claim against agents or employees of a federal agency construed as claim against the United States).  Accordingly, any claims made by the plaintiff against defendant Norton in her official capacity should be construed as against the United States.

"It is well settled that the United States . . . [is] immune from suit, unless sovereign immunity has been waived." Atkinson, 867 F.2d at 590.  Waivers of sovereign immunity must be strictly construed in favor of the sovereign, and may not be enlarged beyond what the language of the waiver requires.  United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992).  The plaintiff who brings an action against the United States has the burden of showing an explicit waiver of sovereign immunity as a prerequisite to federal court jurisdiction. See Fostvedt v. United States, 978 F.2d 1201, 1203 (10th Cir. 1992); Lonsdale v. United States, 919 F.2d 1440, 1444 (10th Cir.

11

1990).

In his Amended Complaint, the only legal authority cited by the plaintiff outside of the regulations that he challenges is The Mining Law of 1872 ("The Mining Law"), and it does not contain an express waiver of sovereign immunity. See 30 U.S. §§ 22 *et seq.*  While it is true that the provisions of 28 U.S.C. § 1331 provide general federal-question jurisdiction to federal district courts to hear statutory or constitutional challenges to federal regulations, it cannot be used as a basis for jurisdiction over a suit against the United States.  Although § 1331 grants general jurisdiction, it does not waive the government's sovereign immunity. See Fostvedt, 978 F.2d at 1203; Lonsdale, 919 F.2d at 1443-44.

The plaintiff has not cited to any jurisdictional authority in this case, however, the court is aware that when a plaintiff sues the government for damages, the waiver may be found in a statute such as the Tucker Act, 28 U.S.C. § 1491 or the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 2671.  When a plaintiff sues the government for equitable relief, waiver may be found in the Administrative Procedures Act ("APA"), 5 U.S.C. § 702.

The court is also aware, however, that United States has not waived its sovereign immunity for constitutional torts asserted against federal agencies or the directors of those agencies in their official capacity which seek compensatory

damages.  See FDIC v. Meyer, 510 U.S. 471, 484-85 (1994) (Bivens[1] action not implied directly against federal agencies); Hatten v. White, 275 F.3d 1208, 1210 (10th Cir. 2002) (federal employees in official capacities immune from Bivens suit); Farmer v. Perrill, 275 F.3d 958, 963 (10th Cir. 2001) ("There is no such animal as a Bivens suit against a public official tortfeasor in his or her official capacity."). The issue of any equitable relief that may be sought by the plaintiff based upon a constitutional tort is a little less clear.

An argument could be made under the concurring opinion of Justice Harlan in Bivens, that sovereign immunity also bars injunctive action against federal officials in their official capacities for violation of a persons constitutional rights.  See Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 404-05 (1971).  When the relief sought is the prevention or discontinuance of an alleged wrong by a federal official in their official capacity, the issue arises as to whether the directive the court is asked to impose is actually a mandate to the sovereign they represent.  "If it is, then the suit is barred, not because it is a suit against an officer of the Government, but because it is, in substance, a suit against the Government over which the court, in the absence of consent, has no jurisdiction."  Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 687 (1949).

---

[1] In the case of Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 (1971), the Supreme Court recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights.

The equitable relief sought by the plaintiff in this lawsuit directly concerns and runs contrary to the regulations governing occupancy and use of public lands administered by the Secretary of the Interior through the BLM. Therefore, by requesting that this court constrain the authority of the BLM under the equitable relief he seeks, the plaintiff is, in substance, requesting relief against the government. This court has no jurisdiction to hear such a claim, and therefore, the ruling in <u>Bivens</u> cannot supply a jurisdictional basis for the plaintiff's claims for equitable relief founded upon any allegations of constitutional torts committed against him in this case.

Before agreeing with the defendant that the Amended Complaint should be dismissed in its entirety because the plaintiff has failed to or cannot establish that this court has jurisdiction based on a waiver of sovereign immunity, because of the plaintiff's *pro se* status, I will consider whether the plaintiff could amend his pleadings to allege jurisdiction for any of his claims under either the common waivers of sovereign immunity found in the APA, the Tucker Act, or the FTCA.

      **1.    The APA.**

            **a.    Application of the Subpart 3715 regulations to the plaintiff.**

The APA provides a right of action against agencies and officers of the United States to persons adversely affected or aggrieved by agency actions. 5 U.S.C. § 702. However, before review may be sought in federal court, the agency action must be

"final." 5 U.S.C. § 704.  An agency action is not considered final for purposes of § 704 where the agency provides by rule for administrative appeal to a superior agency authority and provides that the action is inoperative while administrative appeal is pending.  Id.  Section 704 expresses the administrative "exhaustion" requirement, which applies to all challenges to agency action brought under the APA.  Darby v. Cisneros, 509 U.S. 137, 154 (1993).  A decision rendered by BLM officials regarding the use and disposition of public lands is subject to review by the IBLA.  See 43 C.F.R. § 4.1(b)(3)(i).

As demonstrated by the defendant, to the extent that plaintiff is challenging the issuance of the Amended NON, he has failed to exhaust his administrative remedies because there is no well-pled facts or evidence provided by the plaintiff to demonstrate that he filed an administrative appeal of the Amended NON within 30 days, as allowed by 43 C.F.R. § 3715.9 and 43 C.F.R. part 4.

Further, to the extent that plaintiff is challenging the BLM's ability to order him removed from the public lands, he has not exhausted his remedies, because the administrative process is not yet complete.  Before the BLM can take further action to require removal of plaintiff's residence facilities and reclamation of the site, the BLM must issue a cessation order.  See 43 C.F.R. § 3715-7.1(b).  There is nothing in the record to demonstrate that the BLM has issued a cessation order to the plaintiff.  If the BLM does determine that the plaintiff has not taken the necessary corrective action outlined in the Amended NON and issues a cessation order, then plaintiff can seek

15

review and a stay of the cessation order by the IBLA.  <u>See</u> 43 C.F.R. §§ 4.21, 3715.9.  If

the IBLA grants a stay, the cessation order would not become effective until the IBLA

rules on the merits of the appeal.  43 C.F.R. § 4.21(c).

To the extent plaintiff seeks judicial review of the IBLA's July 22, 2004, final

decision under the APA, "the reviewing court shall hold unlawful and set aside agency

action, findings, and conclusions found to be arbitrary, capricious, and abuse of

discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); <u>see</u>

<u>Olenhouse v. Commodity Credit Corp.</u>, 42 F.3d 1560, 1573-74 (10th Cir. 1994).  This

standard requires that the agency provide a reasoned basis for its decision and that

the decision be supported by the facts in the record.  <u>Olenhouse</u>, 42 F.3d at 1575.

Even if the court does not agree with the agency's findings, those findings cannot be

set aside if they are supported by substantial evidence.  <u>Four B Corp. v. NLRB</u>, 163

F.3d 1177, 1182 (10th Cir. 1998).  Substantial evidence is "such relevant evidence as

a reasonable mind might accept as adequate to support a conclusion."  <u>Id</u>. (internal

quotation marks and citation omitted).

The 20 page, single-spaced opinion of the IBLA details the complete record

reviewed on appeal, thoughtfully considers the arguments of the parties, and clearly

sets forth the regulatory provisions applicable to the case at hand in rendering the

decision.  <u>See</u> Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1), Docket #22,

Exh. A-4.  The rationale for the decision is plainly stated, and documented by

reference to the record evidence.  The issues of use of the mining site as a residence

and use of the mining site for storage of mining equipment and ore, together with concerns of notice and opportunity to correct noncompliance, were viewed separately and at length. Id. Under the 5 characteristics enumerated at 43 C.F.R. § 3715.2-1 which could provide a basis for a finding of permissible residential occupancy of public lands, the tribunal found no support in the record nor did plaintiff cite to any contrary evidence in the record on appeal which would have supported any one of the five characteristics. Id. at Exh. A-4, pp. 13-15. However, it was determined that plaintiff met several criteria for maintaining storage buildings on the site, but only barely, because the work being done on the mining site was minimally compliant with the regulatory provisions. Id. at p. 16. Because the NON was intended to give notice to the plaintiff of the existence and nature of noncompliance and allow him an opportunity to correct it, but the NON instead ordered the plaintiff to cease all occupancy and reclaim the mining claim, the IBLA found it to be premature. Id. at p. 19. The evidence cited by the IBLA in the making of its decision amply constitutes substantial evidence.

From the record evidence and proceedings which took place, there is no question that the IBLA acted within its scope of authority in reviewing the matter before it on appeal under 43 C.F.R. § 4.1(b)(3)(i), the choice made by it was based on a consideration of relevant factors, no clear error of judgment is evidenced by the decision, and necessary procedural requirements were followed in the IBLA's actions. Accordingly, the ruling of the IBLA was not arbitrary or capricious. See

Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 415-17 (1971) (*overruled on unrelated grounds by* Califano v. Sanders, 430 U.S. 99, 105 (1977)) (listing factors to be considered under arbitrary and capricious standard of review).  The determination of the IBLA that the evidence and arguments presented did not satisfy the requirements of 43 C.F.R. § 3715.2-1 for the maintenance of a residence on the claim, but did satisfy the requirements for the maintenance of a storage facility, and that the issuance of the NON in requiring cessation of plaintiff's use or occupancy and reclamation did not satisfy the notice requirements of 43 C.F.R. § 3715.7-1, constituted an appropriate exercise of discretion under the regulations and not an abuse thereof.

### b.  Facial challenge to the regulations.

### i.  Subpart 3715 regulations.

Plaintiff has requested that this court "overturn the 43 C.F.R. § 3715 regulation passed by Babbitt in 2000."  However, as pointed out by the defendant, no regulations that comprise 43 C.F.R. subpart 3715 were promulgated in 2000, so the plaintiff is presumably challenging the legality of the regulations promulgated in 1996.  See 61 Fed.Reg. 37,125 (1996).  However, based upon the facts that plaintiff has alleged in his pleadings, the issue does not appear ripe for judicial consideration.

The doctrine of ripeness "prevent[s] the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference

18

until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-149 (1967) (*overruled on other grounds by* Califano, 430 U.S. 99 (1977). The question of ripeness may be considered on a court's own motion. Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57, n.18 (1993) (*citing* Regional Rail Reorganization Act Cases, 419 U.S. 102, 138 (1974)).

> Absent [a statutory provision providing for immediate judicial review], a regulation is not ordinarily considered the type of agency action 'ripe' for judicial review under the [APA] until the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him. (The major exception, of course, is a substantive rule which as a practical matter requires the plaintiff to adjust his conduct immediately . . . .)

Lujan v. National Wildlife Federation, 497 U.S. 871, 891 (1990).

Under the discussion in the preceding section concerning plaintiff's failure to administratively exhaust the Amended NON and the fact that the administrative process is not yet complete, because the BLM has not yet issued a cessation order under 43 C.F.R. § 3715-7.1(b), this case is not ripe and jurisdiction over the plaintiff's claim should not be exercised.

### ii.    Subpart 3809 regulations.

Plaintiff has requested that this court "cancel" the regulations found at 43 C.F.R. subpart 3809 that were promulgated in 2000, and "return to the 1980 version" of the same regulations, because the regulations issued in 2000 are "intentionally and

overly punitive of the mining industry," while the 1980 version "recognized private property rights of mining claimants."

The power of the federal judiciary to act, however, is specifically limited to live cases or controversies between the parties to the litigation. U.S. CONST. art. III, § 2. Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot - i.e. where the controversy is no longer live and ongoing. Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). A claim will be "deemed moot unless a proper judicial resolution settles some dispute which affects the behavior of the defendant toward the plaintiff." McAlpine v. Thompson, 187 F.3d 1213, 1216 (10th Cir. 1999) (quotations omitted).

As noted by the defendant, the plaintiff does not identify which part of the subpart 3809 regulations he challenges as "overly punitive." To the extent that he is challenging the "substantial irreparable harm" standard found at 43 C.F.R. § 3809.5 (2000), the regulations have been substantially revised by final rule promulgated in October 2001, when the "substantial irreparable harm" standard was repealed, see 66 Fed.Reg. 54,834 (2001). Accordingly, any such claim would be moot and this court must decline to exercise jurisdiction. See Beattie v. United States, 949 F.2d 1092, 1093 (10th Cir. 1991) (stating that mootness is a threshold issue, because the existence of a live case or controversy is a constitutional prerequisite to federal court jurisdiction).

20

Additionally, standing is a threshold issue and jurisdictional prerequisite for maintaining a case in a federal forum. See United States v. McVeigh, 106 F.3d 325, 334 (10th Cir. 1997). To establish standing under Article III of the Constitution, plaintiffs must meet three requirements. First, plaintiffs must demonstrate that they have "suffered an 'injury in fact' - an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotations and citations omitted). Second, plaintiffs must establish causation, "a causal connection" between the injury and the defendant's conduct. Id. Third, the plaintiff must demonstrate redressability, that is "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" Id. at 561. "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. Plaintiff cannot establish these requirements.

Plaintiff has presented no evidence or well-pled facts to demonstrate that as of the time of the filing of this lawsuit, the BLM was attempting to enforce any provision of the subpart 3809 regulations with respect to plaintiff's mining claim. Without any action by the BLM in this regard, he cannot demonstrate an injury in fact or a causal connection between the injury and conduct by the agency. The plaintiff must have standing at the time of the filing of a complaint. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (standing is "[t]he requisite personal interest that must exist at the commencement of the litigation."). As posited by the defendant, the

record indicates that "[p]laintiff's challenge of the subpart 3809 regulations is nothing more than an expression of his philosophical objection to the regulatory provisions."

### c.    Patent moratorium.

Similarly, plaintiff lacks standing to challenge the patent moratorium imposed by Congress, because plaintiff has submitted no evidence and has set forth no well-pled facts in his pleadings to demonstrate that he had filed a patent application for the Ace #7 mining claim at the time Congress enacted the patent moratorium.  Because plaintiff has not filed a patent application for the Ace #7 mining claim, he has no "vested right" to receive a patent.  See, e.g., Alaska Miners v. Andrus, 662 F.2d 577, 579 (9th Cir. 1981); Freese v. United States, 639 F.2d 754, 758 (Ct.Cl. 1981).  Since the plaintiff did not use the procedures set forth in the federal mining laws for the obtaining of a patent, he cannot show an "injury in fact" based upon the moratorium imposed by Congress on the issuance of mining patents.  See Lujan, 504 U.S. at 560-61.  Accordingly, plaintiff fails to meet the requirements for standing to challenge the legality of the patent moratorium.

Plaintiff has failed to establish standing to bring a facial challenge to the 2000 regulations at 43 C.F.R. subpart 3809 or to the patent moratorium, and therefore cannot use the provisions of the APA to provide a waiver of sovereign immunity for claims in this regard.

### d.    Mandamus relief.

The APA provides that "the reviewing court shall decide all relevant questions of

law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action.  The reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed."  Forest Guardians v. Babbitt, 174 F.3d 1178, 1187 (10th Cir. 1999) (citing 5 U.S.C. § 706(1)).  In order to invoke jurisdiction under § 706(1), the plaintiff must demonstrate that the agency failed to perform an act that was legally required.  Norton v. SUWA, 542 U.S. 55, 124 S.Ct. 2373, 2379 (2004).  Section 706(1) "empowers a court to compel an agency to perform a ministerial or nondiscretionary act, or to take action upon a matter, without directing how it shall act. Id. (citations and internal quotations marks omitted).  Thus, predicate to any action by this court to compel agency action must be the plaintiff's establishment that the agency has unlawfully failed to act.

Issuance of a patent "prior to a validity determination is not a ministerial act." R.T. Vanderbilt Co. v. Babbitt, 113 F.3d 1061, 1067 (9th Cir. 1997).  In this case, there is no evidence that a determination that all conditions for issuance of a patent to the Act #7 mining claim has occurred.  Plaintiff has provided no evidence or well-pled facts to demonstrate that he has even taken the first step toward obtaining a patent, by filing a patent application.  Therefore, this court would be outside of its authority under § 706(1) in ordering the BLM to grant the plaintiff a patent to his mining claim.  See Marathon Oil Co. v. Lujan, 937 F.2d 498, 501 (10th Cir. 1991) ("[W]hile the district court can compel the defendants to exercise their discretion, it cannot dictate how that discretion is to be exercised.").  Similarly, the Mandamus statute, 28 U.S.C. § 1361,

23

will not supply an independent basis for jurisdiction when such jurisdiction is otherwise absent. <u>Andrean v. Secretary of United States Army</u>, 840 F.Supp. 1414, 1420 (D.Kan. 1993). The bottom line is that the plaintiff has failed to demonstrate or allege any failure of the defendants to perform a required ministerial act which would justify an order of mandamus.

**e.    Conclusion.**

The provisions of the APA cannot provide a waiver of sovereign immunity which would allow the plaintiff to demonstrate a jurisdictional basis for the claims he seeks to pursue in this court.

**2.    The Tucker Act.**

The Tucker Act waives sovereign immunity and allows money damages against the United States for "any claim against the United States founded either upon the Constitution, or any Act of Congress." 28 U.S.C. § 1491(a)(1). In order to file suit under the Tucker Act, "[a] substantive right must be found in some other source of law." <u>United States v. Mitchell (Mitchell II)</u>, 463 U.S. 206, 216 (1983). Also, "the claimant must demonstrate that the source of substantive law he relies upon 'can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." <u>Id</u>. at 216-17 (<i>quoting</i> <u>United States v. Testan</u>, 424 U.S. 392, 400 (1976)).

The plaintiff has asserted that the BLM has made a "regulatory taking" in this case, based on the potential destruction to his "mining and living quarters" for

24

noncompliance with 43 C.F.R. § 3715 in the sum of $164,000.  Plaintiff also claims that further action to remove his residence from the claim will result in ongoing losses to him of $1,000 per month (i.e., expenses of $2.50 per gallon for gas and $400 per month for rent).  Unless an express statutory grant of jurisdiction can be found elsewhere, a regulatory takings claim against the United States is generally considered a Tucker Act claim.  See 28 U.S.C. §§ 1346(a)(2), 1491(a)(1); Palm Beach Isles Assoc. v. United States, 208 F.3d 1374, 1384 (Fed.Cir. 2000) (citing Broughton Lumber Co. v. Yeutter, 939 F.2d 1547 (Fed.Cir. 1991) and Bowen v. Massachusetts, 487 U.S. 879 (1988)).

The Tucker Act waives sovereign immunity with respect to claims against the United States founded upon the Constitution, Acts of Congress, executive regulations, or contracts.  See 28 U.S.C. § 1491; Schroeder v. Bush, 263 F.3d 1169, 1177 (10th Cir. 2001); Burkins v. United States, 112 F.3d 444, 449 (10th Cir. 1997).  The United States Court of Federal Claims has jurisdiction over such claims, but the United States district courts have concurrent jurisdiction when the claim does not exceed $10,000.  28 U.S.C. § 1346(a)(2).

As noted by the defendant, plaintiff has placed a value on his claim in this regard which exceeds the jurisdictional limit of this court, and jurisdiction lies exclusively with the United States Court of Federal Claims.  See Testan, 424 U.S. at 397-98.

**3.    The FTCA.**

The FTCA grants a limited waiver of sovereign immunity:

for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). To the extent that plaintiff's claims for damages may be construed as alleging tortuous conduct on the part of the United States or its employees, the FTCA provides for a limited waiver of sovereign immunity for claims falling within the range of its provisions. See 28 U.S.C. § 2671 *et seq.* Constitutional claims, however, are not cognizable under the FTCA's jurisdictional provision, 28 U.S.C. § 1346(b). See Meyer, 510 U.S. at 477-78 (holding that a "constitutional tort claim is not 'cognizable' under § 1346(b) because it is not actionable under § 1346(b)").

As a jurisdictional prerequisite, the FTCA bars a claimant from bringing suit in federal court until he has exhausted administrative remedies. See 28 U.S.C. § 2675(a); McNeil v. United States, 508 U.S. 106, 113 (1993); Duplan v. Harper, 188 F.3d 1195, 1199 (10th Cir. 1999); Pipkin v. U.S. Postal Serv., 951 F.2d 272, 273 (10th Cir. 1991). In order to comply with Section 2675(a), a claimant must file an administrative claim which contains "(1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum certain damages claim." Cizek v. United States, 953 F.2d 1232, 1233 (10th Cir. 1992)

26

(citations omitted).  The requirements are jurisdictional and cannot be waived.  <u>See</u> <u>Id</u>.  Furthermore, because the FTCA constitutes a waiver of the government's sovereign immunity, the court must strictly construe its notice requirements.  <u>See</u> <u>Id</u>.

Plaintiff has supplied no evidence or well-pled facts or facts from which it can be inferred to demonstrate that he has filed an administrative claim which would satisfy the exhaustion requirements under the FTCA.  Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and to impose an unnecessary burden on the judicial system.  <u>Id</u>. (quotation and citation omitted).  Further, the only proper defendant in an FTCA case is the United States of America, not a particular agency or the head of that agency.  <u>See</u> 28 U.S.C. § 2674.  Plaintiff in this case has sued the Secretary of Interior, but even if the court substituted the United States as a defendant on any FTCA claim the plaintiff may be seeking to make in this case, the result would be the same because he has failed to demonstrate administrative exhaustion prior to the filing of this lawsuit.

### 4.   Conclusion.

Plaintiff has not met his burden of showing a waiver of sovereign immunity for the claims raised in the Amended Complaint, and none is apparent under the most common waivers found in <u>Bivens</u>, the APA, the Tucker Act, or the FTCA.  Accordingly, dismissal of the Amended Complaint in this regard is appropriate.

C.      **Requested Personnel Action.**

Plaintiff has requested that the court terminate the employment of three BLM

employees: Field Manager John Husband, Geologist Robert Ernst, and Geologist

John Morrone.  However, plaintiff has failed to allege a cause of action or a

jurisdictional basis for the court to consider this request for relief, and absolutely none

is apparent from the record in this matter.  Accordingly, this claim should be

dismissed for lack of subject matter jurisdiction.

D.      **Conclusion.**

Plaintiff fails to allege any basis on which subject matter jurisdiction can be

found to exist for the claims he seeks to bring in this lawsuit, and even liberally

construing the *pro se* filings of the plaintiff, none is apparent from the record.

Accordingly, dismissal of this action, in its entirety, pursuant to Fed.R.Civ.P. 12(b)(1) is

appropriate.

II.     **Defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6), Or In The Alternative, Motion For A More Definite Statement Pursuant To Fed.R.Civ.P. 12(e).**

While a review of defendant's motion in this regard demonstrates that it is well-

reasoned and on-point to the pleadings on file herein, the defendant's separate

motion challenging the subject matter jurisdiction of this court demonstrates that this

court lacks subject matter jurisdiction in this case.  Because a lack of subject matter

jurisdiction precludes this court from further considering the merits or substance of

plaintiff's claims under the defendant's Rule 12(b)(6) or Rule 12(e) motion, a ruling

28

on this motion essentially becomes an advisory opinion.  The Constitution does not allow a federal court to issue such advisory opinions.  *Cf.* <u>Preiser v. Newkirk</u>, 422 U.S. 395, 401 (1975).  Accordingly, the defendant's motion should be denied as premature, subject to refiling if appropriate following resolution of the issue of jurisdiction.

**III.    Plaintiff's Petition For Stay.**

Plaintiff has requested injunctive relief in the form of a stay of any further action by the BLM.  A party seeking a preliminary injunction must show: 1) a substantial likelihood that the movant eventually will prevail on the merits; 2) that the movant will suffer irreparable injury unless the injunction issues; 3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party, and; 4) that the injunction, if issued, would not be adverse to the public interest.  <u>Lundgrin v. Claytor</u>, 619 F.2d 61,63 (10th Cir. 1980).  Because injunctive relief is an extraordinary remedy, "the right to relief must be clear and unequivocal." <u>Utah Licensed Beverage Ass'n v. Leavitt</u>, 256 F.3d 1061, 1065-66 (10th Cir. 2001) (quotation omitted).

**A.    Likelihood Of Success On The Merits.**

As the analysis under the defendant's Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(1) has demonstrated, this court lacks subject matter jurisdiction over plaintiff's claims.  Since this court is without jurisdiction to hear the plaintiff's claims on their merits, the likelihood of his success on the claims is not a factor

which weighs in favor of the plaintiff or against him in considering plaintiff's request for a stay.

**B.    Irreparable Harm.**

Although the Tenth Circuit has not adopted a black letter definition of what constitutes irreparable injury, the essence of the concept requires "a substantial threat of harm to the movant that cannot be compensated by money." Harvey Barnett v. Shidler, 143 F.Supp.2d 1247, 1255 (D.Colo. 2001). More specifically, the concept of irreparable harm refers to "harm that might occur . . . if the preliminary injunction is not granted." Mountain Med. Equip., Inc. v. Healthdyne, Inc., 582 F.Supp. 846, 848 (D.Colo. 1984).

Plaintiff has failed to allege any well-pled facts or facts from which it can be inferred to demonstrate irreparable harm. The BLM has not yet issued any cessation order which would require removal of plaintiff's residence facilities and/or reclamation of the site. The potential economic injury alleged by the plaintiff, which appears to be contingent on the removal of plaintiff's residence and other items from public lands, does not constitute "irreparable harm" for purposes of injunctive relief because of the availability of monetary damages.

**C.    Balance of Harms.**

As succinctly stated by the defendant, plaintiff has not demonstrated any imminent injury or harm because, under the Amended NON, he has been given the opportunity to cure his noncompliance in the use and occupancy of public lands and

there has been no cessation order issued.  However:

> By contrast, [the Secretary of] Interior has an overriding interest in complying with its statutory obligation under section 302(b) of FLPMA to prevent unnecessary or undue degradation of the public lands.  43 U.S.C. § 1732(b).  As the BLM's regulations state, activities that are not reasonably incident and are not authorized under any other applicable law or regulation constitute unnecessary or undue degradation.  43 C.F.R. § 3715.7-05.  Preventing BLM from pursuing its administrative remedies for removing invalid occupancies limits the agency's ability to protect the public lands from unnecessary or undue degradation, and is contrary to the statutory intent of FLPMA.  *See* 43 U.S.C. § 1701(a)(8).

DEFENDANT'S OPPOSITION TO PLAINTIFF'S PETITION FOR STAY, Docket #13, pp. 7-8.

### D.   Public Interest.

The public has a generalized interest in having administrative matters resolved in an orderly fashion, and by an agency having the expertise and discretion to deal competently and expeditiously with such matters.  In the context of this case, the public also has an obvious interest in the reasonable use of public lands and protection of environmental quality.   Congress has evidenced an intent that mining claims should be used only for purposes reasonably incident to mineral development that does not unnecessarily or unduly degrade the lands by enacting such laws as the Federal Land Policy and Management Act of 1976 ("FLPMA").  The FLPMA requires the Secretary to "take any action necessary to prevent unnecessary or undue degradation of the lands," including public lands encumbered by mining claims located under the Mining Law.  43 U.S.C. § 1732(b).  Issuing an injunction which would preclude the BLM from pursuing its administrative remedies against the

plaintiff would be adverse to the public interest in unduly disrupting agency operations, prematurely involving the judiciary in agency functions, hampering the effectiveness of the administrative process, and reducing the BLM's ability to safeguard public lands.

### E.      Conclusion

In sum, the four factors for injunctive relief do not weigh in the plaintiff's favor. Plaintiff has failed to allege harm which outweighs the harm to the defendant and the interference with the public interest in the orderly and effective administration of public lands by the BLM.  Moreover, plaintiff cannot show a likelihood of success on his claims.  Accordingly, plaintiff's request for injunctive relief should be denied.

### <u>CONCLUSION</u>

Based upon the foregoing, and the pleadings on file herein, it is hereby

**RECOMMENDED** as follows:

1.      Defendant's Motion To Strike Plaintiff's Second Amended Complaint [Filed February 7, 2005; Docket #28] be **GRANTED**.

2.      Defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(1) [Filed January 6, 2005; Docket #22] be **GRANTED**, and this lawsuit dismissed in its entirety, without prejudice.[2]

3.      Defendant's Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(6) [Filed January 6, 2005; Docket #21-1] be **DENIED** as

---

[2]Settled law on the subject dictates that a dismissal for lack of jurisdiction should be without prejudice.  <u>See</u> <u>Hollander v. Sandoz Pharm. Corp.</u>, 289 F.3d 1193, 1216-17 (10th Cir. 2002) (finding that a dismissal for lack of jurisdiction does not address the merits of a claim, and is therefore without prejudice to filing in an appropriate forum).

premature, subject to refiling if appropriate following resolution of the issue of subject matter jurisdiction.

4.      Defendant's alternate Motion For A More Definite Statement Pursuant To Fed.R.Civ.P. 12(e) [Filed January 6, 2005; Docket #21-2] be **DENIED** as premature, subject to refiling if appropriate following resolution of the issue of subject matter jurisdiction.

5.      Plaintiff's Petition For Stay [Filed November 5, 2004; Docket #9] be **DENIED**.

Dated at Denver, Colorado, this 2nd day of September, 2005.

BY THE COURT:


s/ O. Edward Schlatter
_____
O. Edward Schlatter
United States Magistrate Judge

## ADVISEMENT UNDER FED. R. CIV. P. 72

Be advised that all parties shall have ten (10) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. FED. R. CIV. P. 72. The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. United States v. Raddatz, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within ten (10) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court. Thomas v. Arn, 474 U.S. 140, 155 (1985); Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991); Niehaus v. Kansas Bar Ass'n, 793 F.2d 1159, 1164 (10th Cir. 1986).